UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **DONNA DOWDY HOLMAN,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 4:13-CV-00502-MHH |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner, Social Security** } | |
| **Administration,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), claimant Donna D. Holman seeks judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of the Administrative Law Judge ("ALJ") who denied Ms. Holman's claim for a period of disability and disability insurance benefits. For the reasons stated below, the Court remands the Commissioner's decision for further evaluation.

**I.      STANDARD OF REVIEW**

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

1

scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II. PROCEDURAL AND FACTUAL BACKGROUND

On August 12, 2009, Ms. Holman applied for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. (R. 11,

86).[1]  The Social Security Administration denied Ms. Holman's application on December 14, 2009. (R. 11, 59).  At Ms. Holman's request, on July 26, 2011, an Administrative Law Judge conducted a hearing concerning Ms. Holman's application. (R. 11-24).  Ms. Holman and an impartial vocational expert, Dr. David W. Head, testified at the hearing. (R. 11).  At the time of the hearing, Ms. Holman was 46 years old, and she had a tenth grade education. (R. 35, 86).  She previously worked as a general clerk, a material handler in a textile mill, a spinner in a textile mill, a cashier, a dietary aide in a nursing home, and a patient attendant in an assisted living center. (R. 52-53).

On July 26, 2011, the ALJ denied Ms. Holman's request for disability insurance benefits.  (R. 11-24).  The ALJ concluded that Ms. Holman "had not engaged in substantial gainful activity since September 1, 2007, the alleged onset date" of disability. (R. 13).  The ALJ also found that Ms. Holman had the following severe impairments: mitral valve prolapse, migraine headaches, fibromyalgia, possible degenerative joint disease of the cervical and lumbar spine and hips, tendonitis/arthritis of the shoulders, hypothyroidism, and depression. (R. 13).  However,  the ALJ determined that Ms. Holman did not have an impairment or combination of impairments that meets or medically equals any of the listed

---

[1] The ALJ's decision and both Ms. Holman and the Commissioner's brief state that Ms. Holman filed her application on August 12, 2009. (R. 11).  The application summary contained in the record indicates that Ms. Holman filed her application on August 27, 2009. (R. 86).  Whether Ms. Holman originally filed her application for benefits on August 12, 2009 or August 27, 2009 is immaterial to the Court's analysis.

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 17).

The ALJ found that "[Ms. Holman] had the residual functional capacity to perform light work as defined in 20 C.F.R. §404.1567(b) except she is limited to noncomplex . . . tasks and simple one to two step procedures; no work around unprotected heights; or exposure to extremes of temperature or humidity; and no exposure to continuous vibrations." (R. 18).  In making this finding, the ALJ concluded that Ms. Holman's medical impairment could reasonably be expected to cause some symptoms; however, according to the ALJ, her statements concerning the intensity, persistence, and limiting effects of her pain conflicted with the RFC assessment. (R. 20).

To reach this conclusion, the ALJ considered Ms. Holman's symptoms and whether they were reasonably consistent with objective medical evidence, opinion evidence, and "other evidence" submitted.[2] (R. 19; 20 C.F.R. § 404.1529).  The ALJ noted that there was no indication that Dr. Kathleen Duryea, a treating physician, "believed [Ms. Holman] to have impairments that would interfere with her ability to work on a sustained basis."[3]  (R. 20).  The ALJ also reviewed reports from Dr. Terisa Thomas, a physician treating Ms. Holman for depression, hot flashes, fatigue, and headaches.  (R. 13).  The ALJ considered reports from Dr.

---

[2] 20 C.F.R 1529(c)(3) states that "other evidence" includes statements about a claimant's symptoms, evidence submitted by non-treating sources, and observations by other persons.

[3] Dr. Duryea examined Ms. Holman ten times between August 2007 and August 2008. (R. 266-298).

Beth Hughes, who examined Ms. Holman multiple times between October 2008 and August 2010. (R. 20; 149-162; 215-247). Although Dr. Hughes diagnosed Ms. Holman with fibromyalgia in October 2008 and in December 2008, the ALJ found no reports of disabling pain or limitations as a result of the fibromyalgia. (R. 20, 155, 158). The ALJ noted that Dr. Hughes even encouraged Ms. Holman to engage in exercise and physical activity. (R. 20, 150, 155). Additionally, the ALJ reviewed records from Dr. Allison Vann, a treating physician who examined Ms. Holman in November 2010 and January 2011. (R. 20). Dr. Vann recorded Ms. Holman's history of fibromyalgia in November 2010 treatment notes, but Dr. Vann did not make an independent fibromyalgia diagnosis during any of Ms. Holman's examinations. (R. 20, 250). Dr. Vann diagnosed Ms. Holman with hypothyroidism and right elbow tendinitis. (R. 250-251). However, the ALJ concluded that:

> Dr. Vann's records do not indicate that [Ms. Holman] complained of pain all over her body so severe that she was unable to work, sleep, concentrate, or do housework or yard work . . . .

(R. 20, 250).

Furthermore, the ALJ found that Ms. Holman's daily activities were not consistent with disabling physical or mental limitations. In Ms. Holman's psychological evaluation, Dr. Wilson concluded that Ms. Holman had severe depression, and the combination of her problems "ma[d]e it unlikely that she could maintain employment in a competitive work environment." (R. 196). However,

5

the ALJ found that Ms. Holman's own accounts of her daily activities, including caring for her son, household chores, watching television, working on the computer, shopping, going to church, and visiting family, were inconsistent with "disabling pain or limitations related to any impairment or combination of impairments." (R. 20). Further, the ALJ discredited Dr. Wilson's assessment of Ms. Holman's physical limitations because this conclusion was inconsistent with Ms. Holman's treating physicians' medical records and because Dr. Wilson, a licensed psychologist who evaluated Ms. Holman once, was unqualified to evaluate her physical impairments. (R. 21).

The ALJ also noted that Ms. Holman's claims about the intensity, persistence, or functionally limiting effects of her impairments could not be substantiated by objective medical evidence.[4] (R. 20). For example, Ms. Holman testified that no medication helped her pain; however, her medical records indicate that she has taken different pain medications with varying success since the alleged date of her disability. (R. 20). The ALJ cited a March 2008 report by Dr. Duryea where Ms. Holman reported her arthralgia medication to be "effective." (R. 20, 281). The ALJ also noted that on July 23, 2008, Ms. Holman told Dr. Duryea that

---

[4] The ALJ noted that when Ms. Holman completed form SSA-3368, the Adult Disability Report, she responded, as an answer to Question J, that she quit working in June 2006 because she "would have been laid off due to cutbacks not because of any health problems." (R. 104). In her report, Ms. Holman cited "depression, fibromyalgia, and mitral valve prolapse" as illnesses or conditions that limit her ability to work. (R. 104).

6

Cymbalta might be the cause of her headaches, and Dr. Duryea promptly changed her medication. (R. 269).

Additionally, the ALJ commented that Ms. Holman never reported headaches to Dr. Vann, nor did Dr. Virenjan Narayan, a cardiologist treating Ms. Holman for mitral valve prolapse, report any disabling pain or limitations.[5] (R. 21, 257). Thus, the ALJ determined that Ms. Holman's medical records were inconsistent with her allegations of severe and frequent "headache pain" lasting approximately one to two days. (R. 21). Moreover, the ALJ found inconsistencies between Ms. Holman's medical records and her claims of thyroid disorder, significant fatigue, swelling, insomnia, limitations in movement, and medication side effects. (R. 21). The ALJ noted that Ms. Holman's medical records do not support allegations of thyroid disorder, fatigue, or swelling; she complained of insomnia but testified that she does not have a sleep disorder; and she testified that her medications caused hair loss, dizziness, and ringing in her ears, but there is no evidence that she complained about these symptoms to her doctors. (R. 21). The ALJ also cited inconsistencies between reports of Ms. Holman watching television and working at a computer for prolonged periods and her allegations that she cannot concentrate and suffers from memory problems. (R. 22).

In making his RFC determination, the ALJ assigned significant weight to a

---

[5] The record indicates that Dr. Narayan examined Ms. Holman on January 12, 2010, February 24, 2011, and March 8, 2011. (R. 255-262).

7

report by Dr. Sathyan Iyer, a physician who examined Ms. Holman at the state's request. The ALJ found Dr. Iyer's report to be consistent with Ms. Holman's medical records as a whole. (R. 21-22, 179). Dr. Iyer concluded that Ms. Holman "may have an impairment of functions involving bending, lifting, overhead activities, walking for long distance[s, and carrying]." (R. 181). However, according to Dr. Iyer, Ms. Holman "does not have significant limitation of function involving sitting, standing, handling, hearing, and speaking." (R. 181).

The ALJ concluded that Ms. Holman is capable of performing her past relevant work as a material handler in a mill and as dietary aide. (R. 22). The ALJ also determined that other jobs exist in the national economy that she also is able to perform, including office or hospital cleaner, sorter, and fast food worker. (R. 22-23). Accordingly, the ALJ found that Ms. Holman was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 24).

On September 21, 2011, Ms. Holman filed a request for review with the Appeals Council, and on January 11, 2013, she sent a one-sentence letter requesting a status update. (R. 7). Seven months later, on February 7, 2013, the Appeals Council denied Ms. Holman's request for review. (R. 1, 83). Thus, the ALJ's July 26, 2011 decision became the final decision of the Commissioner. (R. 1). Having exhausted all administrative remedies, Ms. Holman filed this action for judicial review pursuant to §205(g) of the Social Security Act. 42 U.S.C. §405(g).

## III.  ANALYSIS

Ms. Holman presents three issues on appeal.  First, Ms. Holman contends that the Appeals Council erred in its decision to deny her request for review because it did not consider Social Security Ruling 12-2p. (Doc. 15, p 11; Doc. 18, pp. 2-4). Alternatively, Ms. Holman contends that the Appeals Council should have remanded her case to the ALJ for a revised step three determination using SSR 12-2p. (Doc 15, 11-12; Doc 18, pp. 2-4).  Second, Ms. Holman argues that this Court should reverse the decision because the ALJ did not correctly evaluate fibromyalgia under the third step of the evaluation process. (Doc 15, pp. 12, 14). Third, Ms. Holman contends that the ALJ did not give proper weight to Dr. Wilson's medical findings concerning her severe and disabling depression. As explained below, the Court remands this action to the Commissioner so that the ALJ may consider Ms. Holman's fibromyalgia pursuant to SSR 12-2p.  Therefore, the Court does not reach Ms. Holman's other arguments on appeal.

After the ALJ issued his decision on July 26, 2011, but before the Appeals Council denied Ms. Holman's appeal on February 7, 2012, the Social Security Administration published SSR 12-2p.  The ruling became effective on July 25, 2012 and applied to the ALJ's July 26, 2011 decision because Ms. Holman's appeal was before the Appeals Council for review on the effective date.  *See* SSR 12-2p, 2013 WL 3104869, at *1 n. 1 ("[T]he policy interpretations in this SSR also

9

apply . . . to claims above the initial level."); *see also Iles v. Colvin*, 2014 WL 1330010, at * 4 (W.D. Okla. March 31, 2014).[6]

SSR 12-2p provides instruction on how an ALJ should develop evidence and assess fibromyalgia in disability claims. The ALJ found that Ms. Holman's fibromyalgia was a severe impairment at step two of the evaluation process. However, the ALJ did not have the benefit of SSR 12-2p while considering whether Ms. Holman's fibromyalgia is disabling. SSR 12-2p provides guidance for evaluating whether fibromyalgia medically equals a listing alone or in combination with other impairments. Further, SSR 12-p states that when making an RFC determination, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" SSR 12-2p, 2013 WL 3104869, at *6. Additionally, when determining whether a claimant is capable of doing any past relevant work or any other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to "be alert to the possibility that there may be exertion or nonexertional" limitations, such as postural or environmental limitations, that may impact the analysis. *Id.*

---

[6] The parties did not submit, and the Court has not found, Eleventh Circuit authority that explains whether SSR 12-2p is retroactive. Through its independent research, the Court located the *Iles* opinion. Under similar facts, the *Iles* court remanded the Commissioner's decision to the ALJ for further consideration of the claimant's fibromyalgia under SSR 12-2p. *Iles*, 2014 WL 1330010, at *3-5. The Court finds *Iles* persuasive.

10

The Court cannot determine whether the ALJ would or should have reached different results at steps three, four, and five of the sequential analysis had his decision been informed by SSR 12-2p. Therefore, remand to the Commissioner is proper for the ALJ to evaluate Ms. Holman's fibromyalgia under SSR 12-2p.

## IV. CONCLUSION

Consistent with the reasons stated above, the Court **REMANDS** this action for further findings and proceedings consistent with this opinion. The Court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this September 8, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE